# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ERICK R. RIOS | CIVIL ACTION |
| VERSUS | NO. 19-07992 |
| WESTPORT LINEN SERVICES, LLC | SECTION: "KWR" |

## ORDER AND REASONS

Before the Court is **Defendant's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Rule 12(b)(6) (R. Doc. 14)** filed by the Defendant, Westport Linen Services, LLC ("Westport"), seeking dismissal of Plaintiff's lawsuit in its entirety, as the allegations set forth in the First Amended Complaint fail to state a viable claim or cause of action against Defendant Westport upon which relief may be granted. Plaintiff Erick Rios ("Rios") opposes the motion. R. Doc. 15. The Court heard this motion on the briefs.

## I. Factual Background

### A. Original Complaint

On February 22, 2019, Rios filed this *pro se* employment discrimination complaint against Westport in the State of Louisiana Civil District Court for the Parish of New Orleans. R. Doc. 1-5, p. 3. On April 3, 2019, the action was removed to the United States District Court invoking the Court's federal question jurisdiction. R. Doc. 1. Rios alleges that, on March 7, 2018 he was denied promotion to the position of maintenance chief because he is of Hispanic/Latino origin. Specifically, on March 16, 2018, Rios expressed an interest in a maintenance lead position, which he was denied purportedly due to his several tardy violations. R. Doc. 1-5, p. 6. As a result, of the denied promotion, Rios resigned from his job on May 17, 2018, which he contends constitutes constructive discharge. R. Doc. 1-5, p. 7-8.

### B. Charge of Discrimination

On September 10, 2018, Rios filed a Charge of Discrimination with the Louisiana Commission on Human Rights and the EEOC complaining that he was discriminated based upon his race. R. Doc. 1-5, p. 14. He neither specifically alleged harassment nor constructive termination. *Id.* He does, however, complain that in June 2017, despite his applying and interviewing for Maintenance Lead, he began working as a Maintenance Technician and throughout the entirety of his employment with Westport his manager, Paul Spitzer ("Spitzer"), refused to allow him to apply for promotions to the supervisory positions of Maintenance Lead and Maintenance Chief. *Id.* As for the discriminatory actions, Rios complains that his manager Spitzer tolerated and even condoned tardiness from Caucasian employees, such as his supervisor Jeremy Frye ("Frye"), by still considering Frye for the position of Maintenance Chief despite Spitzer's refusal to consider him due to his tardy violations, the very same reason. *Id.*

### C. First Amended Complaint

On July 25, 2019, Rios filed a First Amended Complaint and largely recalled the facts setting forth the reasons for his constructive discharge. R. Doc. 13. He also alleges that when he was hired, the Defendant hired workers through contracting agencies rather than traditional job postings. R. Doc. 13, ¶ 15. He complained that his boss Frye was hired without relevant experience or education. R. Doc. 13, ¶ 20. Rios contends that despite his training and experience that his manager Spitzer assigned him to the low skilled position of linen dryer/sheet puller work rather than maintenance work which was assigned to Frye. R. Doc. 13, ¶ 22. Rios complains that he was hired as a maintenance technician but assigned to linen work. R. Doc. 13, ¶ 17. He complains while his supervisor Frye recommended that Rios be designated as employee of the month that on the

day of the recognition, Rios complains that Spitzer derisively and mockingly called out Rios's name when the plaque actually had someone else's name on it, and then Spitzer smirked and walked off. R. Doc. 13, ¶ 29.

Rios also alleges that the Defendants created a hostile work environment and implemented racially selective and improper disciplinary scheme that targeted minority workers and resulted in the denial of promotions and pay raises. R. Doc. 13, ¶¶ 32-34. Specifically, he alleges that after close to one year of working for the company that he had enough experience to rise to the position of Chief of Maintenance, which had been vacant since August 2017. Despite his expression of interest in being promoted to the position and inquiry with the plant manager via text message, Westport ultimately advised Rios that it was not seeking to fill the position. R. Doc. 13, ¶36. Rios alleges that he was denied this promotion to a position that ceased to exist as of July 21, 2017 because of his Hispanic/Latino origin. R. Doc. 13, ¶38.

At some point prior, Rios had also believed, due to his qualifications, he could be promoted to Maintenance Lead and inquired about whether there was anything he could do to advance a promotion. *Id.* Westport also rejected this promotion request citing to his excessive tardy violations. *Id.* Thereafter, he started showing up to work on time, followed company polices, and inquired as to the length of time required to elapse before he would be reconsidered for promotion. *Id.* Still, he was overlooked.

Rios complains of disparate impact because Frye, his Caucasian supervisor, was also frequently tardy but still considered for promotion. R. Doc. 13, ¶¶ 39-41. Rios further alleges after repeated denials that he sought other employment because of the fear of retaliation and consequently suffered emotional distress, humiliation, embarrassment, stress, anxiety, and low

self-esteem. R. Doc. 13, ¶43. On May 9, 2018, Rios lodged an official complaint with Westport's Human Resources Department about management's discriminatory practice who, after reviewing his complaint, found no discrimination. R. Doc. 13, ¶46. On May 17, 2018, Rios tendered his resignation from his position as Maintenance Technician after receiving additional workplace violations for tardiness. R. Doc. 13, ¶47.

In addition to the Title VII claims, Rios complaint seeks relief pursuant to 42 U.S.C § 1981 for the alleged race-based discrimination and retaliation which he experienced. R. Doc. 13, ¶¶52-55. Relying on the same facts, he seeks lost earnings, past and future, emotional distress and other equitable and compensatory damages allowed. R. Doc. 13, ¶57. Rios also seeks an award of punitive damages including front and back pay equitable relief, liquidated damages and attorney's fees, costs and interest. *Id.*

Westport contends that Rios's claim fails to plead facts sufficient to establish two essential elements of his failure to promote discrimination claim; namely that (1) Rios has not alleged that he was qualified for the position he sought and (2) Rios has not alleged that after Rios was denied promotion, the positions remained open and Westport sought applicants for these positions. R. Doc. 14-1, p. 2. Westport further contends that Rios's claim fails to plead facts sufficient to establish the essential elements of his constructive discharge claim by failing to allege that Westport deliberately made his working conditions so intolerable that a reasonable person in his position would be forced to an involuntary resignation. *Id.* More specifically, Westport contends that Rios's complaint makes clear that he prematurely, and without justification, quit his job with Westport. *Id.*

Rios contends that he has adequately pled his causes of action and that the Defendant's motion should be denied. R. Doc. 15, p. 2. Rios contends that he exhausted his Title VII claims and that no administrative remedy procedure exists for his § 1981. R. Doc. 15, p. 3. Rios reasserts that he was subjected to reassignment to menial work compared to Caucasian employees who were not required to the same. R. Doc. 15, p. 5. He alleges that he was subject to harassment and forced to resign. R. Doc. 15, p. 6.

II. **Standards of Review**

   A. **12(b)(6) Standard**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *see also Cuvillier v. Taylor,* 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555-56 (". . . a Rule 12(b)(6) motion to dismiss. . . must provide the plaintiff's grounds for entitlement to relief-including factual allegations that when assumed to be true 'raise a right to relief above the speculative level'")). Further, the court is not to evaluate the plaintiff's likelihood of success," but rather, "to determine whether the plaintiff has stated a legally cognizable claim that is plausible." *Lone Star Fund V(US) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir.2010) (citing *Iqbal*, 556 U.S. 662).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 678-79 (citing Fed. R. Civ. P. 8). "In addressing a motion to dismiss for failure to state a claim, the court must accept as true all well-pleaded facts in the complaint and view those facts in

the light most favorable to the plaintiff." *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007).

While a complaint must contain something more than a general recitation of the elements of the claim, there is a minimal pleading standard for simple claims of race and sex discrimination. *See E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773 (7th Cir. 2007). "The type of facts that must be alleged depend upon the legal contours of the claim." *Id.* at 782. To determine whether a complaint meets this standard the "reviewing court [must] draw on its judicial experience and common sense." *Davis v. Metro. Pier & Exposition Auth.*, No. 11 C 9018, 2012 WL 2576356, at *5 (N.D. Ill. July 3, 2012) (citing *Iqbal*, 556 U.S. at 678). "For Title VII claims to survive a motion to dismiss there are "two easy clear hurdles. . .: First, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests. Second, the allegations must plausibly suggest that the plaintiff has a right to relief, raising the possibility above the speculative level." *Id.* at *7 (citing *Concentra*, 496 F.3d 773) (discussing minimal pleading standards in race and sex discrimination cases).

**III. Analysis**

**A. Racial Discrimination in Failure to Promote**

In order to establish a prima facie case of discrimination for failure to promote Rios must allege: "(1) is a member of a protected class; (2) that [s]he applied and was qualified for a job for which the employer was seeking applicants; (3) that, despite [her] qualifications, [she] was rejected; and (4) that, after [her] rejection, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications." *Haley v. Hosp. Serv. Dist. of W. Feliciana Par.*, 321 F. Supp. 3d 670, 675 (M.D. La. 2018) (citing *Sharkey v. Dixie Elec.*

*Membership Corp.*, 262 F. App'x 598, 601 (5th Cir. 2008)). Westport contends that Rios does not include in neither his Original nor First Amended Complaint prongs two and four as Rios neither complains that he was qualified for a position for which the Westport was seeking applicants and that after Rios's rejection that the position remained open and Westport continued to seek applicants from persons of Rios's qualifications.

### i. *Rios's Qualifications for the Positions*

First, Westport contends that Rios fails to sufficiently plead racial discrimination, in that he fails to allege that he was passed over for a position or promotion he was qualified for due to his race or national origin. Specifically, Westport contends that while Rios complains that he was more experienced than Frye, he never alleges that he was qualified to be promoted to the position of Maintenance Chief. R. Doc. 14-1, p. 5.

In reviewing the allegations set forth, Rios generally alleges that he is of Hispanic/Latino origin, hired in the maintenance department but assigned to linen, and denied promotion opportunities due to previous tardy violations. As to his qualifications, Rios complains that he was discriminated on the basis of race for a job, which "he felt he was more qualified." R. Docs. 1-5 & 15. Rios further contends that management, specifically Frye, knew he was qualified for more responsibility and assignments than linen/dryer sheets (R. Doc. 13, ¶28) and, that by March 7, 2018, he "felt he had gained enough experience at Westport to rise to the position" (R. Doc. 13, ¶35). Later, in that same allegation. However, plaintiff Rios clarifies that "being more than qualified" he decided to inquire about his possible application to these positions. *Id.* Nevertheless, in the amended complaint, Rios concedes that when he did attempt to seek promotion to the

Maintenance Chief position that Spitzer informed him that very day that, as of July 2017, the job no longer existed. R. Doc. 13, ¶¶35 & 36.

While in the original complaint Rios clearly pled that he "felt that he was qualified" (R. Doc.1-5, ¶V), in the First Amended Complaint, Rios more clearly alleges that he was "more qualified" than Jeremy Frye his Caucasian supervisor who had at that moment held the position of Maintenance Lead (R. Doc. 13, ¶35). Despite the fact that Rios alleges Westport was grooming Frye, Rios's Caucasian supervisor, for the position of Maintenance Chief even though Frye was less qualified and periodically tardy, Rios acknowledges that Frye quit his employment with Westport at the position of Maintenance Lead and never acquired the position of Maintenance Chief.

Having reviewed the pleadings filed by Rios, the Court finds that his complaint does not state a claim for racial discrimination for failure to promote because Rios fails to sufficiently allege the existence of a position for which he could have been qualified. By acknowledging that Frye, while perhaps intended for the position, left the company before ascending to the position of Maintenance Chief, Rios fails to allege someone was eventually hired as Maintenance Chief. Rios also does not allege that someone eventually filled Frye's vacant Maintenance Lead position. As Rios does not adequately allege there is such position of Maintenance Chief or Maintenance Lead at Westport, the Court cannot find he adequately alleged he was so qualified for those positions.

### ii. *Availability of the Positions*

Next Westport alleges that Rios has not sufficiently plead racial discrimination in failure to promote where Rios fails to allege that Westport ever accepted applications for the Maintenance Chief or Maintenance Lead positions. Specifically, Westport contends that Rios took it upon

himself to apply for the positions under the erroneous belief that they were open and available, but in reality, and as he was informed upon Westport's receipt of his interest statement, Maintenance Chief position no longer existed. R. Doc. 14-1, p. 5. Westport contends that Rios complaint fails to state a claim because there is no allegation that Westport sought or accepted other applicants or that they ever hired anyone for either job.

Rios contends that he was rejected from promotion for both the Maintenance Chief and Maintenance Lead positions even though he had gained seniority in his position as Maintenance Technician. R. Doc. 15, p. 4. Rios further alleges that he was initially hired as a Maintenance Technician, but then he was immediately assigned to degrading work of Linen Dryer or Sheet Puller, a job for which he did not apply. R. Doc. 15, p. 5. Rios rebukes that he subjectively believes that both positions are needed in every plant facility and avers that the Defendant was in the process of accepting applications for these positions at the time he applied for the positions. R. Doc. 15, p. 4-5.

In the original complaint, Rios alleges that while Westport had already preselected Frye for the position of Maintenance Chief that Rios still decided to inquire about his potential application to the position via text message to Spitzer. R. Doc. 1-5, ¶ V. According to Rios, the company notified him that very day of its elimination of the position nearly a year prior. *Id.* Rios acknowledges that the company never actually promoted Frye to Maintenance Chief but instead he worked in the position Maintenance Lead until his eventual resignation. *Id.* Rios never alleges that the Chief Maintenance position was ever filled.

Furthermore, while Rios does not dispute the tardy violations, Rios complains that when Frye resigned from the position of Maintenance Lead, Westport refused to promote Rios due to

his previous tardy violations, which he claims was not factored against Caucasian employees. *Id.* He further alleges that he learned about Frye's qualifications for Maintenance Lead after he gained access to Frye's employee file and saw that Frye's multiple write-ups due to unexcused absences, and even a previous termination by the company due to job abandonment in May 2016. R. Doc. 1-5, ¶ VII.

In the First Amended Complaint, Rios modifies his allegations to allege that not only was Frye promoted to Maintenance Lead, but he was also later promoted to Maintenance Chief, despite Frye's lack of qualifications and presence of multiple workplace violations and previous termination. R. Doc. 15 (citing R. Doc. 13, ¶¶ 39-41). He also alleges that he is of the belief that Westport was still in need of a Maintenance Chief and Maintenance Lead position at every plant and that they were looking to fill both positions throughout his short remainder of employment with Westport. R. Doc. 15, p. 5.

The Court finds that Rios has pled allegations, which accepted as true, that do not raise his right to relief above a speculative level. A review of the Rios' pleadings shows that he was a Mechanical Technician and Frye was a Mechanical Lead. Frye, according to Rios, was his immediate supervisor who he subjectively believed was less qualified than him. Rios has not pled that Frye held the same or similar responsibilities, shared the same supervisor, or that the ultimate decision maker regarding their employment status was the same. The Court is of the opinion that Rios neither sufficiently pleads that he was qualified for the positions of issue nor that after his "rejection", the position remained open and his employer, Westport, continued to seek applicants from persons of his qualifications. *Haley*, 321 F. Supp. 3d at 675. As such, the Court, after reviewing the pleading in the instant matter, finds that the allegations of Rios, accepted as true, do

not raise the right to relief above a speculative level. *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009). As a result, the Court finds that Defendant Westport's motion to dismiss Rios's Title VII claim of race-based discrimination for failure to promote must be granted.

### B. Constructive Discharge Claim

Westport contends that Rios quite his job on May 3, 2018, because he was denied two opportunities at promotion—Maintenance Chief and Maintenance Lead. R. Doc. 14-1, p.7. Nonetheless, according to Westport, Rios complaint fails to allege that his employer, Westport made his working conditions so intolerable that a reasonable person would have felt compelled to resign. R. Doc. 14-1, p. 6.

A constructive discharge occurs when an employer makes working conditions so intolerable that a reasonable employee would feel compelled to resign. *See Jurgens v. E.E.O.C.*, 903 F.2d 386, 388 (5th Cir. 1990). The inquiry focuses on how events leading up to the plaintiff's resignation would affect a reasonable employee's state of mind; "the employer's intent in creating the allegedly intolerable conditions is irrelevant at this stage." *Guthrie v. J.C. Penney Co., Inc.*, 803 F.2d 202, 207 (5th Cir.1986). However, how a reasonable employee would interpret the employer's intent behind the actions precipitating the resignation can be decisive. *See, e.g.*, *Brown v. Bunge Corp* 207 F.3d 776, 782 (5th Cir.2000) (no constructive discharge without any objective indication that supervisor's demands for better performance were calculated to encourage the employee to resign); *see also Stephens v. C.I.T. Group/Equip. Financing*, 955 F.2d 1023, 1028 (5th Cir.1992) (substantial evidence of constructive discharge where employee "reasonably could have believed that his demotion was a harbinger of dismissal"); *Guthrie*, 803 F.2d at 207 (finding substantial evidence of constructive discharge because the employer downgraded employee's

performance rating, a move "recognized as a first step toward dismissal," and singled him out for reprimands he reasonably believed were pretextual).

Courts consider a number of factors when deciding whether an employee's working conditions were so intolerable that a reasonable person would have felt compelled to resign. *Brown*, 207 F.3d at 783. Employers can constructively discharge an employee by:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger person; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement that would make the employee worse off whether the offer were accepted or not.

*Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 481 (5th Cir. 2008).

The Fifth Circuit found "no support in the case law for the proposition that a simple discriminatory denial of promotion that cannot be reasonably construed as a career-ending action can alone create such embarrassment or humiliation that the denial comprises a constructive discharge." *Jurgens*, 903 F.2d at 392. To support a finding of constructive discharge based upon the employer's past discrimination in promotions, there must be 'additional 'aggravating factors.'" *Id.* at 393. "Aggravating factors include hostile working conditions and any other evidence suggesting any invidious intent on the part of the employer in creating or perpetuating the intolerable conditions compelling retirement or resignation." *McKnight v. Automatic Coin Enter.*, No. CIV. A. 96-3111, 1997 WL 79447, at *4 (E.D. La. Feb. 21, 1997).

Put pointedly, Rios fails to explain how Westport's overlooking him for two promotions resulted in constructive discharge. While Rios alleges in the First Amended Complaint that he was used to train two Caucasian technicians, perform technician work, and open and close the facility, Rios likewise acknowledges that it was only after he was informed he would not receive the Chief

12

or Lead Maintenance promotions that he began looking for other employment. He makes no mention of how this, alone, constitutes intolerable working conditions.

In this case, Rios simply alleges that he began looking for another job because he was denied his other to attempts at getting promoted. He does not allege that he experienced a reduction in salary or offered early retirement. R. Doc. 13, ¶ 44. Moreover, while Rios alleges he was told to quit if he did not like his job assignment, he also alleges, in contrast, that, because he worked hard, Westport eventually promoted him to Mechanic Technician and he was given more job responsibilities such as his training Caucasian employees and making purchases on behalf of the company. R. Doc. 13, ¶ 42. In fact, Rios alleges that he had previously submitted his two-week's notice for resignation but instead opted to stay employed with Defendant Westport after Westport offered him and additional six (6) dollars an hour pay wage. R. Doc. 13, ¶ 26. While he earlier indicated that he was assigned to linen, he did not sustain a reduction in pay and at some point, by his own admission, resumed technician repair work. The Court, here, notes that his initial assignment in this context is not analogous to a reassignment of work duties.

In addition, while he claims in the First Amended Complaint that he worked in a hostile environment due to a selectively racial disciplinary scheme because he is Hispanic, he does not explain further the contours of the alleged scheme other than too say that he observed other persons of minority descent received tardy violations. Instead, Rios alleges that his Caucasian supervisor, Jeremy Frye, was not subjected to the company's tardy policy. Here the Court feels it important to note that Plaintiff Rios implicitly concedes that Frye was subject to Westport's tardy policy where Rios alleges that Frye had previously been demoted and suffered disciplinary—up to and including termination for job abandonment—in May of 2016 for his multiple write-ups and unexcused

absences. R. Doc. 13, ¶ 14. The fact that Frye, Rios Caucasian supervisor had such write-ups itself is indicative that the disciplinary policy was in effect for members of the Caucasian race as well as those of minority descent. Plus, the Court can see nowhere in Rios's allegations complaint of this non-preferential treatment in Westport's application of their disciplinary polices amounting to intolerable working conditions.

As such, the Court does not find that Plaintiff Rios has sufficiently plead aggravating factors, beyond mere perceived harassment, which would give rise to a claim of constructive discharge. As a result, the Court finds that Defendant Westport's motion to dismiss Rios's Title VII claims of race-based discrimination resulting in constructive discharge must be granted.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that the Defendant's **Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Rule 12(b)(6) (R. Doc. 14)** is **GRANTED** insofar as Rios's Title VII claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Rios's § 1981 claim, not the subject of this motion, remains and shall proceed forward.

New Orleans, Louisiana, this 26th day of September 2019.

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**